

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Lee Brady, Commissioner
Department of Banking
Austin, Texas

Dear Sir:

Opinion No.O-3604
Re: Should franchise taxes on
newly organized banks be com-
puted and collected from the
time of the resolution of the
Banking Board granting the
charter or from the date of
delivery of the certificate
of authority?

Your letter of May 24, 1941, submits for the
opinion of this Department the following question, which we
quote therefrom:

"Your attention is directed to the several
statutes governing the granting of charters to com-
merical banks. Article 379 provides that the in-
corporators shall submit to the Banking Board the
articles of incorporation. Article 360 provides
for an investigation by the Board as to the public
necessity, et cetera, and Article 361 provides that
in the event the investigation results in a favorable
determination, then the 'charter shall be granted
and the articles of incorporation or association
shall be filed with the Banking Commissioner who
shall deliver a certified copy thereof to the incor-
porators- - .' Article 362 provides that no State
bank shall transact business unless and until it has
a certificate of authority from the Banking Commission-
er, and Article 364 provides that the Banking Commis-
sioner shall not deliver the certified copy of the
charter until he is presented with the receipt signed
by the Secretary of State showing the payment of the
'required franchise tax'.

"As a practical matter, the articles of
association are often signed, filed and the resolu-
tion of the Banking Board passed months before the
bank is actually ready to engage in business. Fre-
quently the certificate of authority is not delivered

Hon. Lee Brady, Commissioner, Page 2

for an even longer period of time, pending final arrangements to go into business.

"Under the present practice, the Secretary of State is requiring the incorporators to pay franchise tax for the period commencing with the passage of the resolution of the Banking Board.

"In view of the above facts, I respectfully submit the following question: Should the franchise tax be computed and collected from the time of the resolution of the Banking Board granting the charter or from the date of delivery of the certificate of authority?"

Article 364, Revised Civil Statutes, is quoted in full, as follows:

"At the time the articles of incorporation aforesaid are submitted to the State Banking Board, the applicants for charter shall deposit with the Commissioner the fee required by law for the charter they seek to have granted. If the charter is refused by said Board, then the charter fee shall be returned to the applicants. A certified copy of the articles of incorporation shall not be delivered to the incorporators until they present to the Banking Commissioner a receipt from the Secretary of State showing that they have paid to the latter officer the required franchise tax." (Underlining ours)

The language stressed by us in the above statute is unequivocal and mandatory and must be complied with. But Article 361, Revised Civil Statutes, providing that the Commissioner shall deliver a certified copy of the articles of incorporation or association to the incorporators upon the approval and issuance of a charter for such bank, does not specifically fix the time of such delivery. However, it may very well be assumed that such act should be performed in due course and within a reasonable length of time after the issuance of the charter.

On the other hand, Articles 362 and 363, Revised Civil Statutes, requiring all State banks transacting business in Texas to hold a certificate of authority issued

by the Commissioner in the form prescribed, does not necessarily bear any relation, in time or in substance, to the issuance of the charter and the forwarding of the articles of association or incorporation. The articles last adverted to are merely enforcement measures to cause all State banks to continue to comply with the banking laws and their charter powers. Such certificate of authority would not be required to be held and posted by a chartered bank unless and until such bank was actually transacting business, and, hence, might not be issued for a long period of time subsequent to the resolution of the Banking Board granting the bank's charter. Therefore, the Legislature, in providing by Article 364, Revised Civil Statutes, that a certified copy of the articles of incorporation should not be delivered to the incorporators until proof of payment of franchise taxes is made, (which delivery is presumptively concomitant with the issuance or granting of such charter) must necessarily have contemplated that franchise taxes levied by Article 7084, Revised Civil Statutes, would be computed and collected from the date of the issuance or granting of the corporation's charter, which gives the banking corporation a right to existence, rather than from the date of the issuance of a certificate of authority, which merely is an administrative condition prerequisite to the actual transaction of business under such charter.

A glance at the nature of the franchise tax supports this legislative intent. Insofar as it effects domestic rather than foreign corporations, Article 7084, Revised Civil Statutes, provides that "except as herein provided, every domestic corporation heretofore or hereafter chartered. . . .shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock," etc. (Underscoring ours)

With reference to domestic corporations, Article 7086, Revised Civil Statutes, likewise provides that "whenever a private domestic corporation is chartered in this State, . . . such corporation shall be required to pay in advance to the Secretary of State, as its franchise tax from that time down to and including the 30th day of April next following, only such proportionate part of its annual franchise tax, as hereinabove prescribed, as the period of time between the date of filing of its articles of incorporation. . . . and on the 1st day of May following, bears to a calendar year". (Underscoring ours)

It is to be noted, under the above statutes, that the franchise tax is caused to accrue and become due and payable when a domestic corporation is chartered rather than on the date when such corporation actually commences business under such charter. In fact, in the case of Ross Amigos Oil Company, et al, vs. State, 131 S. W. (2d) 316, it was held that such franchise tax accrued upon the corporation's franchise and rights under its charter rather than upon its legal right to do business thereunder. In this connection the court said:

"We have reached the firm conclusion that when the statutes are construed together, as they should and must be, they express a clear intention upon the part of the Legislature to exact payment of the annual franchise tax of domestic corporations, such as appellant, so long as their charter and charter powers are in operating or operative effect, unaffected by the forfeiture in the meantime of its legal right to engage in business because of its default in the payment of the prescribed tax."

The corporate franchise of a state bank springs into existence, under Article 521, Revised Civil Statutes, upon a favorable determination of the Banking Board that a charter should be granted, and its resolution to this effect. It is upon this corporate franchise and existence that the franchise tax is levied and collected rather than upon the legal right to actually engage in business under the subsequently issued certificate of authority, required by Articles 582 and 583, Revised Civil Statutes.

We, therefore, advise that the present practice of the Secretary of State, in requiring payment of franchise taxes for the period commencing with the granting of a corporation's charter and the resolution of the Banking Board thereon, is correct, and should be complied with by the corporations affected.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

APPROVED JUL 19, 1941

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE

PMNJ:mp